ELZINA DEADMAN *et al.*

*v.*

CORDELIA A. YANTIS *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. WILLS—*when devise creates a life estate with vested remainder.* A devise of certain land to the testator's wife "for and during her natural life" and at her death to the testator's daughter and her two children, (naming them,) creates a life estate in the testator's wife with a remainder which vests at the testator's death in his daughter and her two named children.

2. SAME—*a vested remainder may be partitioned or sold on execution.* Subject to the life estate a vested remainder may be partitioned among the remainder-men, and their undivided interests are subject to levy and sale on execution for their respective debts.

3. LACHES—*when party is estopped to dispute title.* A tenant in common who is duly made a party and served with process in a partition suit by the grantee of the other tenants in common, and who makes no defense to the suit but accepts and receipts for her share of the proceeds of the partition sale and makes no objection for a period of ten years, during which the purchaser has made lasting improvements on the land, is estopped to question the title of the complainant as acquired by her from the other tenants in common, even though the partition proceeding is improper.

4. SAME—*equity applies doctrine of laches according to the particular circumstances.* In applying the doctrine of *laches* a court of equity will look to the particular circumstances of each case and is bound by no inflexible rule, although it may, by analogy, adopt the statutory period of limitations as applied in actions at law.

5. JUDICIAL SALES—*effect where the judgment is not founded on bona fide debt.* The purchaser at an execution sale is not required to look beyond the record to ascertain whether the judgment is founded upon *a bona fide* debt, since if it is not so founded it is not void but only voidable at the instance of the party aggrieved, who must act promptly in seeking relief.

6. SAME—*when judgment debtor is estopped to question judgment.* One who permits a judgment to be recovered against her and her interest in land to be sold on execution without making any defense or any attempt to redeem or raising any objection for over ten years, is estopped to subsequently attack the title of the

purchaser at the sale upon the ground that the debt upon which the judgment was recovered had been satisfied before suit was brought.

7. MORTGAGES—*party claiming deed to be mortgage must prove his claim.* One who claims that a deed absolute on its face was intended as a mortgage has the burden of establishing such fact by clear and convincing evidence.

8. SAME—*when no action is necessary to divest right to redeem.* Where the legal title is conveyed by a deed, absolute in form, to secure a loan, no action is necessary to divest the right to redeem, and the same may be lost by limitation or *laches.*

9. SAME—*when the purchaser takes title freed from condition of defeasance.* Where one who has the right to redeem under a deed intended as a mortgage decides to sell his interest and directs the holder of the legal title to convey the same to the purchaser, the latter takes the title divested of the condition of defeasance.

APPEAL from the Circuit Court of Shelby county; the Hon. TRUMAN E. AMES, Judge, presiding.

This is an appeal from a decree of the Shelby county circuit court dismissing, for want of equity, a bill for partition filed by Elzina Deadman against Cordelia Yantis and others. Mary J. Dixon, who was a defendant in the original bill, was by amendment made complainant. John W. Dixon, another defendant, filed an answer confessing the material allegations in the bill, and subsequently filed a cross-bill setting up certain facts and praying relief, which will be more fully stated hereinafter.

The original bill alleged that William Claridge was the owner of the north half of the south-east quarter of section 15, the north half of the south-west quarter of section 14 and the south-east quarter of the south-west quarter of section 14, township 12, north, range 4, east, in Shelby county, at the time of his death, which occurred May 29, 1880; that said Claridge died testate and that his will was duly probated in Shelby county; that by his last will William Claridge devised the two hundred acres of land above described to his widow, Elizabeth M. Claridge, during her

lifetime, with remainder in fee to his daughter, Mary Je-
rusha Dixon, and her two children, John William Dixon
and Elzina Dixon, (now Elzina Deadman,) in equal parts,
as tenants in common. The clause of the will which is sup-
posed to vest the above interests in the parties is the third,
and is as follows:

"*Third*—I do give, devise and bequeath unto my wife,
Elizabeth M. Claridge, for and during her natural life, my
home farm on which I now live, consisting of two hundred
acres, described as follows, to-wit: The north half of the
south-east quarter of section 15, and the north half of the
south-west quarter of section 14, and the south-east quar-
ter of the south-west quarter of section 14, all in town-
ship 12, north, range 4, east, in Shelby county, in the State
of Illinois; and it is my will and desire, and I do direct,
that during the life of my said wife my said daughter, Mary
Jerusha Dixon, and her children, William Dixon and El-
zina Dixon, shall live upon said home place and enjoy the
use and rents and profits thereof, and at the death of said
wife I will and devise said home place to my daughter, Mary
Jerusha Dixon, and her said children, William Dixon and
Elzina Dixon, and the survivors of them, and to their heirs
and assigns forever."

The bill alleges that on the 9th of January, 1905, the
widow, Elizabeth M. Claridge, died, and that by virtue of
said will the title to the real estate thereupon became vested
in Mary Jerusha Dixon and her two children, John W.
Dixon and Elzina Deadman, as tenants in common, each
owning one-third undivided interest, and it is averred that
the title in fee did not vest in Mary J. Dixon and her two
children prior to the death of the life tenant. Cordelia
Yantis, John W. Yantis, E. A. Richardson, George D.
Chafee, and others, were made defendants, and as to the
interest or claim of defendants above named it is charged
that "they claim some interest in or to said premises, or a
part thereof, as grantees, mortgagees, judgment creditors

or tenants, which said interests, and each of them, if any there are, are illegal and void and constitute a cloud upon the title" of the parties in interest. There is no other averment in the original bill respecting the interests or claims of the defendants than the general statement above quoted. The bill concluded with the usual prayer for partition.

Cordelia and John W. Yantis filed a joint and several answer to said bill, admitting the ownership and death of William Claridge and that the lands were devised as stated in the third clause of the will. These defendants, however, contended for a somewhat different construction of the clause of the will devising the lands in question. The answer denies that the title did not vest under the will until the death of the life tenant, and charges that by the will the fee vested in Mary J. Dixon and her two children subject to the life estate of Elizabeth Claridge. The answer denies that Mary J. Dixon and her children, or either of them, have any interest whatever in said real estate, and avers that Cordelia Yantis owns all of said real estate in fee simple; that the title of Cordelia Yantis was obtained in the following manner: On February 17, 1890, John W. Dixon and wife conveyed, by warranty deed, his undivided interest in said premises to George D. Chafee, and that on February 17, 1892, Chafee conveyed the same premises to Cordelia Yantis; that on October 2, 1891, the said John W. Dixon conveyed, by quit-claim deed, all his interest in the premises to E. A. Richardson, and on May 19, 1892, said Richardson conveyed the said premises to Cordelia Yantis. The answer then alleges a recovery of a judgment in favor of J. J. Chrissenberry against John W. and Mary J. Dixon, and, by virtue of an execution on said judgment levied upon the interest of Mary J. Dixon, Cordelia Yantis obtained a sheriff's deed, under said sale, September 29, 1894, to the interest of Mary J. Dixon in the premises. By the conveyance aforesaid it is alleged that Cordelia Yantis became the owner in fee simple of a two-thirds interest in said land,

subject only to the life estate of the widow, Elizabeth Claridge. The answer then avers that on October 1, 1894, Cordelia Yantis, as owner of a two-thirds interest in fee, filed her bill for partition against Elzina Deadman, and avers that such proceedings were had in that case as resulted in a decree of the circuit court of Shelby county finding that Cordelia Yantis was the owner of two-thirds and Elzina Deadman the owner of the remaining one-third. The answer shows that commissioners were appointed in that proceeding, who found the lands not susceptible of division and partition and assigned the north-east quarter of the south-west quarter of section 14 and the north-west quarter of the south-west quarter of section 12, being eighty acres of the two hundred acres, to Elizabeth Claridge in full of her interest in the whole. The answer shows that the lands were appraised in separate tracts at $3200 and that the sale was had on November 30, 1894, and that Cordelia Yantis bought the same for $3275; that the master issued a certificate of sale to her, which was by her assigned to C. W. Steward, upon which a master's deed was issued April 1, 1895, conveying to Steward the whole of said premises, including the eighty acres set off to the widow, subject, however, to her life estate in said eighty acres; that the sale was afterwards approved by the court, and that Elzina Deadman received, in full of her one-third interest, $1078.41, and receipted for the same. The answer charges that Elzina Deadman had been duly served with process and had full knowledge of all of said proceedings and that she received and receipted for the proceeds of said sale, and that the purchaser, Steward, went into possession of one hundred and twenty acres of said land, the widow being in possession of the other eighty. It is alleged that by virtue of said partition proceeding and sale said Steward became the owner in fee simple of the whole of said tract, subject to the life estate in eighty acres, and that he went into possession and remained in open and notorious possession from thence until he con-

veyed the same; that afterwards the widow leased the said eighty acres to said Steward, and that under the said lease said Steward was in possession of the eighty acres and of the one hundred and twenty acres as owner. It is averred that said Steward made valuable and lasting improvements upon said premises after he obtained said deed and before the commencement of this suit; that on June 10, 1904, said Steward, in consideration of $5000, conveyed the whole of said premises to Cordelia Yantis, subject to the rights of the widow therein; that Cordelia Yantis succeeded to the immediate possession of said premises and has been in possession all of the time until the bringing of this suit, and still is in possession of same. It is averred that said Steward and Cordelia Yantis paid all of the taxes assessed upon said premises under claim and color of title made in good faith, and that such payment of taxes was made for more than seven successive years preceding the filing of the bill. The answer claims title by limitation, and sets up the *laches* of Elzina Deadman in bringing this suit as a bar to the same. By an amendment to her answer Cordelia Yantis alleges that she made valuable and lasting improvements on the land after she obtained the deed from Steward.

John W. Dixon filed a cross-bill, in which he claimed to be the owner of a one-third undivided interest in the premises, and charged that Mary J. Dixon and Elzina Deadman were the owners of the other undivided two-thirds interest therein. He charges in his cross-bill that his undivided interest is subject to a certain indebtedness due to John W. or Cordelia Yantis, secured by a mortgage upon his interest, brought about as follows: On February 17, 1890, John W. Dixon borrowed from George D. Chafee $500 and executed to Chafee a mortgage in the form of a deed for said premises to secure a note for said amount; that on October 2, 1891, he became indebted to E. A. Richardson in the sum of $100, and executed to him a mortgage in the form of a deed upon said premises to secure said debt; alleges that

on February 17, 1892, said Chafee and Richardson were desirous of receiving their money, and that John W. Dixon arranged with John W. Yantis for the money to pay said ·indebtedness, and that Chafee and Richardson were to transfer said security to Yantis; that in pursuance of this arrangement Chafee and Richardson, at the request of Dixon, and by arrangements with John W. Yantis, conveyed said premises to Cordelia Yantis; avers that said Yantis paid the indebtedness to Chafee and Richardson and advanced to Dixon the further sum of $400, making a total of about $1200; that John W. Dixon executed his notes to said Yantis for said amount and received from said Yantis bond for a deed for the re-conveyance of said premises upon the payment of said indebtedness; alleges that he has made payments in money and property to a large amount and that there is not to exceed the sum of $600 now due on said indebtedness; prays for an accounting and offers and tenders to pay whatever may be found to be due upon such accounting, and asks that the conveyance to Cordelia Yantis be held as a mortgage and that he be allowed to redeem therefrom.

Cordelia Yantis and John W. Yantis answered the cross-bill, in which they deny that the transaction by which the title was conveyed to Cordelia Yantis was a loan or that the deed was a mortgage, and re-asserted, as in their previous answer to the original bill, that the transaction was a sale and that the deed was an absolute conveyance made in pursuance thereof. The answer sets up possession, payment of taxes, making of valuable improvements, and insists that John W. Dixon is estopped, by reason of *laches,* from claiming any rights in the premises.

After replications were filed the cause was referred to a special master to take the proofs and report his conclusions, both of law and fact. The master reported that the original bill and cross-bill were not sustained by the proof and that the equities were with defendants as to both bills,

and recommended a decree dismissing them. Elzina Deadman filed sixty-two objections to the findings of the master as respects the original bill and John W. Dixon filed twenty-three objections to the findings on the cross-bill, all of which were overruled by the master and the case was heard in the circuit court on exceptions to the master's ruling. The circuit court overruled all exceptions and entered a decree dismissing both the original and cross-bills.

The evidence in this case is very voluminous and need not be set out in this statement. The testimony bearing upon such questions of fact as are necessary to be determined will be set out and discussed in the opinion.

R. M. PEADRO, and BRAZ D. TULL, for appellants.

WALTER C. HEADEN, GEORGE B. RHOADS, and DOVE & DOVE, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Under the third clause of the will of William Claridge there can be no doubt that the testator intended that his wife, Elizabeth M. Claridge, should have the two hundred acres of land in controversy during her natural life, and that his daughter, Mary J. Dixon, and her children, John W. and Elzina, and the survivors of them, should have a vested fee simple title in remainder, subject only to the life estate of the widow. The title of the tenants in fee being vested upon the death of the testator, it became subject to the laws of conveyance, partition and sale on execution for the debts of the owners.

That reversioners and remainder-men owning interests in fee in land subject to an unexpired life estate are entitled to partition is well established law in this State. (*Scoville* v. *Hilliard,* 48 Ill. 453; *Hartmann* v. *Hartmann,* 59 id. 103; *Drake* v. *Merkle,* 153 id. 318; *Ruddell* v. *Wren,* 208 id. 508; *Miller* v. *Lanning,* 211 id. 620; *Dee* v. *Dee,* 212 id.

338.)   It is equally well established that a vested remainder is subject to levy and sale on execution against the remainder-man.   (*Railsback* v. *Lovejoy,* 116 Ill. 442; *Springer* v. *Savage,* 143 id. 301; *Ducker* v. *Burnham,* 146 id. 9; *Brokaw* v. *Ogle,* 170 id. 115.)   In the case last above cited it is held that the remainder-man's interest encumbered with a homestead may be levied upon and sold subject to the homestead right of the widow, and that such premises are subject to partition among the heirs, subject to the right of dower and homestead estate of the widow.   The rule appears to be otherwise with respect to contingent remainders.   *Haward* v. *Peavey,* 128 Ill. 430.

Since it is contended that the titles of Mary J. and John W. Dixon and Elzina Deadman were divested at different times and by different methods, it will be necessary to consider the case as applicable to each of these parties separately.

*First, as to the interest of Elzina Deadman.*—The evidence shows that the partition proceeding set up in the answer of John W. and Cordelia Yantis was regularly conducted and resulted in a decree for the sale of the premises; that there was personal service upon Elzina Deadman, as shown by the return of the sheriff of Moultrie county and by the finding of the court in the decree; that in pursuance of the decree a sale was had and that the premises brought approximately their appraised value; that Cordelia Yantis became the purchaser at the sale and received a certificate of purchase, which she assigned to C. W. Steward, upon which a master's deed was issued to Steward April 1, 1895. The evidence also shows that Steward immediately took posession of one hundred and twenty acres of the land in question and continued to hold the same until June 10, 1904, when he conveyed the premises to Cordelia Yantis. Elzina Deadman made no defense to this bill for partition. Without regard to the validity of the Yantis title to the two-thirds interest which she claimed in that suit as against Mary J.

and John W. Dixon, it is clear that, so far as Elzina Deadman is concerned, she is bound by that decree, and will not be heard to say in this or any other suit that Cordelia Yantis had no title. If she desired to question the title of Cordelia Yantis to the interest she claimed, she should have done so in the original partition suit between herself and Cordelia Yantis. Having failed to question her title in that suit she will not be heard now to say that Cordelia Yantis had no interest and that the shares claimed by her belonged to other persons. She is estopped by the adjudication in that case from asserting the non-existence of the Yantis title, which was directly involved and passed on in that litigation. She received the proceeds of her one-third interest, which she has held from the time distribution was made and still holds the same, and does not, by her bill, offer to restore the same to the purchaser at the sale. After the receipt of her share of the proceeds of the sale Elzina Deadman remained silent when in conscience she should have spoken; now equity will debar her from speaking when in conscience she ought to remain silent. Relying on his title obtained with a knowledge of this appellant, the purchaser took possession and has expended large sums of money in improvements and taxes, and it would be highly inequitable, if not positively fraudulent, to permit his title to be disturbed by one whose silence justified a belief that her claim had been abandoned.

Conceding the existence of irregularities in the partition proceeding, there is, in our opinion, such a want of diligence in applying for relief that a court of equity cannot grant it without relaxing its respect for some of the elementary maxims that have ever controlled in the administration of equitable remedies. The summons in the partition case was served on Elzina Deadman on the second day of October, 1894, and the master's deed was executed on April 1, 1895. She filed her bill in this case on November 1, 1905. There was therefore a delay of more than ten years from the date

of the master's deed and more than eleven years from the service of the summons, and since she offered no defense her acquiescence may well be said to date from the service of the summons. No circumstances exist to shield her from the rule that "equity aids the diligent,—not those who slumber on their rights." The scope and effect of this rule, irrespective of any statutory limitation, was stated by an eminent English chancellor as follows: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence." This salutary rule has been constantly applied by courts of equity in this State from its earliest history down to the present time, and our Reports abound in cases illustrative of its application. In administering their remedies, courts of equity, while sometimes adopting the statutory period of limitation, by analogy have never regarded themselves bound down by any hard and fast rule, but, looking at the parties, their relation to each other and the surrounding circumstances, have determined the question of diligence in each case according to equity, having due regard for these elementary principles upon which their jurisdiction rests.

This much we have said on the assumption that the partition proceeding was so irregular as to give rise to some equities in favor of this appellant had she applied to the court in due season and in a proper manner, but we fail to find any such irregularities. It is probably true that the court erred in circumscribing the life estate of Elizabeth M. Claridge to eighty acres, when, under the will, she was entitled to a life estate in the entire two hundred acres. But even if this should be granted, the life tenant did not complain, but accepted what was awarded her and enjoyed it as long as she lived. Perhaps eighty acres was all she

wanted. At all events, this error, if error it was, did the tenants in fee no harm, but was an advantage to them by clearing off the life estate from one hundred and twenty acres, thereby enhancing the value of the fee. If there is any other irregularity in the partition proceeding it has not been pointed out and 'we have been unable to discover it. We can scarcely conceive of a case in which the complaining party has so little to commend her to the favorable consideration of a court of equity. There was no error in dismissing the original bill so far as Elzina Deadman was concerned.

*As to the case of Mary J. Dixon.*—It will be remembered that Mary J. Dixon is the mother of Elzina Deadman and John W. Dixon. The evidence shows that Mary J. Dixon became surety for her son, John, on certain notes upon which suit was brought, resulting in a judgment for $177 against Mary J. Dixon, and by virtue of an execution issued upon said judgment her interest in the two hundred acres of land was sold to Cordelia Yantis, and that Illinois W. Hess, who had a judgment against John W. and Mary J. Dixon for $200, after the expiration of twelve months and within fifteen months from the sheriff's sale redeemed the premises and assigned his judgment and certificate of redemption to Cordelia Yantis, to whom a sheriff's deed was issued for the undivided interest of Mary J. Dixon in 1894. After the sheriff's deed was issued Mary J. Dixon never took any steps to set aside the sale or redeem therefrom, but appears to have abandoned all claim to any interest in the premises until this suit was brought by her daughter, Elzina Deadman, and she was brought in first as a defendant, and afterwards, by amendment, made a complainant in the original bill. The principal objection made to the judgment against Mary J. Dixon upon which her interest in this farm was sold, is a claim that the debt had been paid by the sale of lumber and ties off the land before suit was brought, and that the judgment was therefore based

upon a groundless claim. There is some testimony tending to show that a sufficient amount of timber was removed from the premises and sold to the Chicago and Eastern Illinois Railroad Company, through Richardson, to have paid the debt in full, but the evidence is not at all clear upon this point. We do not deem this a question of controlling importance, and hence will not set out and discuss the evidence bearing upon that question. If it was established that no debt in fact existed at the time the suit was brought and judgment rendered, the judgment would simply be voidable on the ground of fraud. The purchaser at an execution sale is not required to look beyond what is disclosed upon the face of the record to ascertain if the judgment was founded upon a *bona fide* debt. The judgment thus fraudulently obtained is not absolutely void, but is only voidable, at the instance of the party aggrieved, when relief is applied for in apt time. Mary J. Dixon has failed to pursue her remedy with that diligence that is required to give her a standing in a court of equity. All that has been said upon this question in disposing of the case of Elzina Deadman applies to the case of Mary J. Dixon, and for the reasons there given there was no error in dismissing the bill as to her.

*The case as to John W. Dixon.*—By his cross-bill John W. Dixon alleges that his deeds to Chafee and Richardson were intended to secure the grantees for certain indebtedness due from him to them, and that their deeds to Cordelia Yantis were given to secure a loan made for the purpose of obtaining money to liquidate the Chafee and Richardson debts. So far as the deed executed to Chafee is concerned, the evidence satisfactorily shows that it was made as security for a debt of $500, and the same may be said with reference to the conveyance made by Dixon to Richardson; but when these parties conveyed to Yantis, the evidence does not support the contention of John W. Dixon that the conveyance to Yantis was likewise intended as a mere security for a debt. Upon this subject E. A. Richardson testifies

that John W. Dixon told him that he wanted to sell his interest and straighten up his debts; that Richardson made an agreement with Yantis by which Yantis was to furnish the money to pay Chafee and Richardson and some other claims against Dixon and give Dixon $400 in cash and take a deed to his interest in the premises, and that this arrangement was consummated. He testifies that the conveyance to Yantis was an absolute conveyance of all interest that John W. Dixon had, and that there was no agreement that Yantis would re-convey to Dixon upon the payment of the amount of money furnished to him by Yantis. Chafee testifies that he made a deed to Yantis in pursuance of some arrangement made by Dixon and Yantis; that he did not know the details of the understanding between them. Yantis testifies that he bought Dixon's interest outright and paid for it, and that Chafee and Richardson made the deeds to Cordelia Yantis, his wife, by the mutual consent of all the parties. He contradicts the claim of John W. Dixon that he agreed, either in writing or otherwise, to re-convey the premises to Dixon upon the re-payment to him of the money that he had advanced. John W. Dixon is the only witness who testifies to the alleged agreement to re-convey. He says that he executed his note to Yantis at the time the deed was made, and that a bond was executed to him by Yantis but was not signed by Mrs. Yantis. He claims that he left the bond with Yantis and that he has never had possession of it since. This is substantially all the evidence bearing upon the question involved. The burden of proof is upon the party alleging that a deed absolute on its face was intended only as a mortgage, to establish such fact by clear and convincing evidence. *Knowles* v. *Knowles,* 86 Ill. 1; *Bailey* v. *Bailey,* 115 id. 551; *Keithley* v. *Wood,* 151 id. 566; *Burgett* v. *Osborne,* 172 id. 227; *Williams* v. *Williams,* 180 id. 361; *Heaton* v. *Gaines,* 198 id. 479.

Appellants insist that having established that the conveyances to Chafee and Richardson were mortgages, and

Yantis having accepted conveyances from them with notice of the character of title in the grantors, the latter will be held to hold the title subject to the same defeasance that existed in the original conveyances, and authorities are cited to sustain the proposition that having established the character of mortgages in these conveyances they will ever be treated as mortgages. Under the established law of this State a deed absolute with a parol or verbal defeasance is valid, and the party entitled to the equity may maintain a bill to redeem if the fact can be established by that quantity of proof that the law demands. (*Tillson* v. *Moulton*, 23 Ill. 600; *Hallesy* v. *Jackson*, 66 id. 139; *Pearson* v. *Pearson*, 131 id. 464.) While a condition of defeasance may rest in a parol or verbal agreement between the parties it may be extinguished in the same way. When the legal title is conveyed to secure a loan no action is necessary to divest the right to redeem. The entire legal title is passed by the deed. (*Fitch* v. *Miller*, 200 Ill. 170.) The right to redeem may be lost by limitation or *laches*. Where a deed has been made which was intended as a mortgage, and the party having the right to redeem makes a sale and directs the holder of the legal title to convey the premises to the purchaser, such purchaser will take the title divested of the condition of defeasance. (*Maxfield* v. *Patchen*, 29 Ill. 39; *Carpenter* v. *Carpenter*, 70 id. 457; *West* v. *Reed*, 55 id. 242; *Cramer* v. *Wilson*, 202 id. 83.) The preponderance of the evidence shows that John W. Dixon made a sale to Yantis, and that the conveyance was made in pursuance of such arrangement and by his direction. There is here also a want of diligence on the part of John W. Dixon to assert his rights. The deeds to Mrs. Yantis were made in 1892, and there is no satisfactory explanation given why twelve years should be allowed to elapse before any attempt was made to set up his right to redeem.

Our conclusion is, upon the whole case, that neither Elzina Deadman, Mary J. Dixon nor John W. Dixon has any

title, rights or interests in the premises involved, and that there was no error in dismissing the original and cross-bills for want of equity.

The decree of the circuit court of Shelby county will be affirmed.

*Decree affirmed.*