## Mary Hickey et al., Appellees, v. Mark W. Barrett et al., Appellants.

1. APPEAL AND ERROR, § 725*—*when cross-bill not considered.* The Appellate Court cannot consider on appeal a cross-bill not contained in the record.

2. MORTGAGES, § 23*—*what constitutes mere option to buy back land not rendering deed absolute on its face a mortgage.* Where land is conveyed to a person to secure a debt, and, upon the debt becoming due, an agreement is entered into with a third person whereby the latter is to advance the money to pay the debt and receive a deed from the first grantee, and it is further agreed between the original grantors and the second grantee that in lieu of interest the latter shall receive a rental until such time as the original grantors desire and are able to take up the indebtedness, and such second grantee agrees to make a quitclaim deed upon payment of the sum due, the agreement between the original grantors and the second grantee amounts but to an option to buy back the land at some time in the future, if the original grantors should desire and should be able to do so, and such an option does not render a deed absolute on its face a mortgage.

3. MORTGAGES, § 23*—*when deed absolute on its face conveys legal title.* A deed by the owners of land to another from whom they procured a loan of money, which deed is absolute on its face, conveys the legal title to the grantee, and his conveyance to a third person furnishing the money to take up the alleged loan passes the legal title to the latter.

4. EQUITY, § 258*—*when additional and inconsistent defense not set up in amended answer.* On a bill by the alleged owners of land against a second grantee to have a deed from the prior grantee to the second grantee declared a mortgage, where the original

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

answer averred that the second grantee became vested with title to the premises by virtue of the deed from the first grantee, an amendment to such answer averring that complainants, for the express purpose of disclaiming any right, title or interest in the premises, and in consideration that the second grantee would buy the premises and lease them to complainants as long as their mother lived, executed a warranty deed to such second grantee, did not set up a defense additional and inconsistent with the defense averred in the original answer.

5. MORTGAGES, § 29*—*what constitutes variance in suit to have deed declared mortgage.* There is a variance between the bill and proofs, in a suit by the alleged owners of land against a second grantee to have a deed from a prior grantee to the second grantee declared a mortgage, where it is charged in the bill that the second grantee agreed to reconvey such land when complainants desired and would be able to take up the indebtedness, and there is proof that at the time of the transaction between such second grantee and complainants for taking up of the alleged loan owed by complainants to the first grantee, a written contract was entered into by which the second grantee gave complainants the right to redeem within 5 years.

6. MORTGAGES, § 31*—*who has burden of proof to show that deed absolute on face is intended as mortgage.* The burden rests upon the party alleging that a deed absolute on its face was intended as a mortgage, to establish such fact.

7. MORTGAGES, § 32*—*what is evidence that deeds not intended as.* The fact that two successive grantees of land, one of the deeds to which land was from the first grantee to the second grantee, refused to loan money to the original grantors but only offered to advance it upon condition that such grantors execute an absolute deed to the land, is strong evidence that the deeds were never intended to be mortgages.

8. MORTGAGES, § 23*—*when purchaser from holder of deed procures good title.* Where a party having a right to redeem from a mortgage, in form an absolute deed, directs the holder of the legal title to convey the premises to a purchaser, such purchaser takes the title divested of the condition of defeasance.

9. APPEAL AND ERROR, § 1399*—*weight of finding of master in chancery.* Where a master in chancery saw the witnesses and heard them testify, his finding of facts is entitled to consideration.

10. MORTGAGES, § 32*—*when evidence to show deed to be mortgage carefully scrutinized.* Evidence attempting to establish a deed absolute on its face to be a mortgage will be scrutinized with

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

great care, after a delay of 19 years in asserting the right to redeem and after farm values have greatly increased.

11. MORTGAGES, § 32*—*when agreement that deed should be in fact mortgage not shown.* Evidence *held* insufficient to show that there was any agreement between complainants and a second grantee that a deed to the latter from a prior grantee, from whom complainants had procured a loan of money, should be in fact a mortgage to secure an alleged debt for money advanced to pay off the loan from the prior grantee.

Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded with directions. Opinion filed July 15, 1918. *Certiorari* denied by Supreme Court (making opinion final).

BEACH & TRAPP and JAMES E. MILLER, for appellants.

COVEY & WOODS, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Mary Hickey and Sallie Hickey filed their bill in the Circuit Court of Logan county to have declared a resulting trust for an accounting and for general relief. It is alleged, in substance, in the bill that they obtained title to a certain 80-acre tract of land in Logan county on December 30, 1892, by a warranty deed executed by Elizabeth Hickey, which was made subject to a mortgage to secure $800 held by the defendant Barrett; that on August 20, 1895, complainants and said Elizabeth Hickey made and delivered a warranty deed of said premises to one Harry C. Thompson to secure the payment of $5,500, then due and owing to said Thompson; that by the terms of the written agreement which accompanied said warranty deed to Thompson, it was agreed that upon the remittance to said Thompson of the said $5,500 and interest thereon, the said Thompson should reconvey

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by quitclaim deed the title to said property to complainants; that in lieu of interest which would accrue upon said indebtedness, complainants should pay Thompson a certain rental for said premises, which complainants did each year during the continuance of said loan; that at no time did Thompson or complainants ever recognize said warranty deed as anything but a mortgage to secure the payment of said indebtedness; that complainants paid off and discharged the mortgage for $800 then due and owing to Barrett. That on August 15, 1900, the indebtedness to Thompson became due by the terms of said written agreement and he was desirous of receiving his money and transfer to complainants the title to said premises so held by him by way of mortgage under said warranty deed; that complainants applied to said Barrett, defendant, for a loan to take up said indebtedness then due Thompson; that Barrett agreed to loan complainants the said sum of money, and it was agreed by them and Barrett that the latter was to pay Thompson $5,500 in discharge of Thompson's loan and was to receive from Thompson a quitclaim deed of said property as security for said amount so paid by Barrett to Thompson; that it was further agreed by complainants and Barrett that in lieu of interest upon said $5,500, Barrett was to receive a rental for said lands *until such time as complainants desired to and would be able to take up said indebtedness,* and Barrett agreed to make a quitclaim deed of said property to complainants upon the payment of said sum; that in pursuance of said agreement with Barrett, on August 15, 1900, complainants caused Thompson to make a quitclaim deed of said premises to Barrett to secure the payment of said indebtedness and Barrett paid to Thompson for complainants the sum of $5,500 and received and accepted said quitclaim deed from Thompson of said property as security for said indebtedness; that complainants executed and delivered

to Barrett written leases for said lands and paid, in lieu of interest upon said indebtedness, rents as provided in said leases; that Barrett at no time claimed to own any right, title or interest in said property except the holding of said deed as security for the money advanced by him to pay off the loan of Thompson. That on December 6, 1911, without knowledge or consent of complainants, George White, defendant, made and delivered to William E. White, defendant, a quitclaim deed of said premises for the pretended consideration of $22,000; that at the time of the execution of said deed, George White owned no right, title or interest in said premises or any part thereof, but said deed was made solely to defraud complainants and to cloud their title. That on January 2, 1912, Barrett and wife, without the consent or knowledge of complainants, made and delivered a deed of said premises to said George White for a pretended consideration of $19,800; that said deed was fraudulent and executed by Barrett to defraud complainants of their right in said land and if possible to cut off their right of redemption therein. That complainants at all times were ready and willing and offered to pay Barrett the amount of said indebtedness, but that he, in order to carry out the fraudulent purposes aforesaid, told complainants that he did not need the money, to keep the money, and when in the future, at any time they desired to redeem the premises, he would then accept the money and make them a quitclaim deed to the land. That said George White and William E. White knew that Barrett did not own any title or interest in said property except the quitclaim deed from Thompson as security for said loan of $5,500, and that they joined and conspired with Barrett in the fraudulent purpose and design to cheat and defraud complainants out of the title to said land. That on March 1, 1912, William E. White, with full knowledge of the rights of complainants to said premises, made and delivered a mort-

gage to the New Holland State Bank of New Holland, Illinois, for the pretended sum of $4,000; that said bank had full knowledge of the rights and claims of said complainants in said premises, and that said White did not own any title thereto which he could mortgage to any one and that said mortgage, as to complainants, was fraudulent and void. That on January 9, 1913, William E. White brought a suit at law in the Circuit Court of Logan county to recover possession of said land and complainants were unable to make a legal defense to said cause on account of said deeds aforesaid, and were compelled to and did on March 1, 1913, deliver possession of said premises to William E. White and were compelled to pay the rentals mentioned in the lease which had been made to Barrett and which had been fraudulently assigned to William E. White for the year 1912, by Barrett, which rents amounted to $600. That the rentals paid to Barrett were in excess of the rate of interest allowed by law and were usurious; that the fair cash market value of the land conveyed by Barrett to George White was $20,000, and that neither George White, William E. White or any one for them has ever paid complainants for said title nor received any deed of said land from complainants; that the lands held by Barrett were in trust for complainants on condition that they pay said $5,500; that the title so conveyed by him created a resulting trust in favor of complainants and they are entitled in equity to have the legal title transferred to them upon the payment of said sum of $5,500, and they offer and tender into court said sum of $5,500 and offer to pay the same to the person the court shall find to be the holder of the said loan against said land. That the contract between Barrett and complainants was evidenced by writing, and that Barrett kept said contract and has ever since refused to permit complainants to see the same or deliver it to them, and is now fraudulently claiming that there

never was a written contract and that he owns the land. That up to March 1, 1913, complainants had been in the open, adverse, peaceable and exclusive possession of said land, claiming to be the owners thereof, subject to said incumbrance of $5,500, and have paid all taxes legally assessed against said property. That all the defendants had full knowledge that complainants were owners of said land when they received the various conveyances and mortgages aforesaid. That upon a final hearing it be decreed that a resulting trust in favor of complainants be declared subject only to the incumbrance of $5,500; that a quitclaim deed be ordered to be made within a short day of said premises by the parties who appear to hold the legal title, to complainants herein; that the mortgage to the New Holland State Bank be released by the bank and that in default of said deeds being made and said release, the master in chancery make said deeds and release; that in case the court should find the legal title is vested in George White or William E. White, then that an accounting be taken against Barrett of the value of said property after deducting the incumbrance of $5,500.

The answer of Barrett denies that the conveyance from complainants to Barrett was made to secure the payment of the said sum of $5,500, and avers, upon information and belief, that said conveyance was an absolute conveyance of said premises with a parole agreement that, if complainants desired to purchase said premises within the term of one year from the date of said deed, said Thompson would sell and convey the same to complainants for said sum, but that complainants did not avail themselves of said option to so purchase and said option was entirely lost and had expired; denies that complainants applied to Barrett for a loan of $5,500; that he loaned or agreed to loan said sum, that he agreed to take said premises as security, or to receive said deed as security for said

sum, or that he ever agreed to purchase or did purchase said premises from Thompson in any other way than as an absolute, indefeasible, outright purchase of the whole of said premises in fee simple. The answer further avers that the said Elizabeth Hickey was the mother of complainants, was an old woman and had lived upon said premises for many years, and that complainants, prior to and at the time he so purchased the premises, requested him to purchase said premises and lease the same to them as his tenants so that their mother might continue to reside with them thereon, and that she did in fact so reside with them thereon until her death; that when he purchased said premises he did so with the express understanding with complainants that he did purchase the absolute title thereto, to which they both expressly assented and agreed; that after he purchased the premises he rented the same each year by written lease to complainants, who resided on said premises only as tenants and paid rent therefor; that he never consented or agreed to receive rent in lieu of interest and never agreed that complainants should have the right to pay said sum of $5,500, and that he would then quitclaim his interest thereto to them. The answer also sets up the defense of the statute of limitations and of laches and avers the sale to the Whites was made in good faith, and denies all fraud and conspiracy.

Each of the other defendants answered the bill, but as their interests are not involved on this appeal, the averments in their answers need not be mentioned. The cause was referred to the master in chancery to take proofs and to report his findings of law and fact. After all the evidence for complainants in chief and a part of the evidence for the defendants had been introduced, by leave of court, Barrett amended his answer as follows:

"Defendant further answering says that the only

right, title or interest the complainants or either of them had in or to said premises after the said conveyance made by them as aforesaid to the said Harry C. Thompson was the said right or privilege or option to purchase the said premises from the said Harry C. Thompson as aforesaid but that the said Harry C. Thompson after said conveyance to him was the sole owner of said premises in fee simple and in possession thereof and that the complainants occupied the same only as his tenants under a lease for to-wit, five years. And defendant avers that when the said Harry C. Thompson so sold and conveyed said premises to this defendant he conveyed to and vested in this defendant the entire estate and ownership legal and equitable in said premises, and the said complainants for the express purpose of disclaiming any right, title, interest or estate in said premises, in consideration that this defendant would buy said premises, and would lease them to the complainants so long as the said Elizabeth Hickey should live so that the said Elizabeth Hickey might make her home thereon under such lease, on to-wit, the 11th day of August, A. D. 1900, duly made, executed, acknowledged and delivered to this defendant a warranty deed (executed by the said complainants Mary E. Hickey and Sallie Hickey as well as by the said Elizabeth Hickey) wherein and whereby they conveyed and warranted in fee simple, the said premises to this defendant without reservation or exception, and thereby divested themselves of any alleged or pretended claim which they now pretend to have in said premises, and that thereby the said complainants and all persons claiming through or under them are wholly estopped to claim any right, title, interest or estate of any kind or character in or to said premises. Said warranty deed is in the words and figures following to-wit:"

Complainants filed exceptions to the amendments to

the answer on the ground ''that said defense is already inconsistent with the original defense set up in the original answer of Mark W. Barrett, and that said amended answer is therefore impertinent.'' By order of the court, the exception to the answer was reserved for hearing until the hearing upon the exceptions to the master's report. The master reported as his conclusions that by virtue of the quitclaim deed from Thompson to Barrett and the warranty deed from complainants and Elizabeth Hickey set out in the amendment to the answer, Barrett became the absolute owner of the premises; that there was no mortgage or mortgage indebtedness between Barrett and the complainants and no resulting trust in their favor and no right of redemption in them as against Barrett, and that the only relation existing between complainants and Barrett was that of landlord and tenant; that George White purchased said premises from Barrett in good faith for full value and became vested with absolute title to the premises, and that likewise William E. White purchased from George White in good faith for full value the premises in question and became vested with absolute title thereto, and that the New Holland State Bank loaned in good faith to William E. White, with said premises as security by way of mortgage, the sum of $4,000, and that said mortgage is a valid lien on said land for said amount and recommends that said bill be dismissed. Objections were filed by Barrett before the master to the master's report, which were overruled and stood as exceptions thereto in the Circuit Court. The chancellor sustained the exception to the answer and all the exceptions to the master's report except as to the finding in regard to the conveyance to George White and to William E. White and the mortgage of the latter to the bank, all of which he held to be executed in good faith and for full value. The decree finds all the other facts as alleged in the bill and that Barrett should account to

complainants for the value of the land, being the amount received by Barrett from George White $19,-800 less the alleged indebtedness of complainants of $5,500, with interest on the balance at the rate of 5 per cent per annum from September 1, 1911, making the sum total due from Barrett to complainants of $18,-284.14, which was ordered paid within 30 days, and in default that execution issue therefor.

The decree also provides that the cross-bill filed by Barrett be dismissed for want of equity. The record contains no such cross-bill. No error has beeń assigned by appellant on the action of the court in dismissing the cross-bill. Counsel for appellant state in their brief that no cross-bill was filed. Counsel for appellees state in their brief that a cross-bill was filed but could not be found in the files. This court can only consider what the record contains, and as no cross-bill appears thereby to have been filed and as no error has been assigned or argued by counsel for either side in regard thereto, it need not be further noticed. As the judgment of the chancellor in entering the decree in this case was undoubtedly largely influenced by his determination that the amendment to the answer of Barrett advanced an inconsistent defense to that set out in his original answer, and thus eliminated from his consideration the force and effect of the warranty deed executed by complainants to Barrett on August 11, 1900, it is necessary to first consider whether it was error to sustain the exception to this amendment to the answer. The bill avers that on August 20, 1895, the complainants executed a warranty deed of the premises to Thompson to secure the payment of $5,500 then due and owing to him, and that by the terms of the written agreement which accompanied said warranty deed it was agreed that, upon the remittance to Thompson of the said $5,500 and interest thereon, he should reconvey by quitclaim deed the title of said property to complainants. There is

no averment in the bill as to when the $5,500 should be paid or whether complainants were bound to ever pay it. The bill then avers that on August 15, 1900, the indebtedness to Thompson became due by the terms of said contract and he was desirous of receiving his money, and that complainants applied to Barrett for a loan to take up said indebtedness then due Thompson; that it was agreed by complainants and Barrett that the latter was to pay Thompson $5,500 in discharge of Thompson's loan and was to receive from Thompson a quitclaim deed of said property as security for said amount so paid by Barrett to Thompson; and that it was further agreed by complainants and Barrett that in lieu of interest, Barrett was to receive a rental on said lands *until such time as complainants desired to and would be able to take up said indebtedness,* and Barrett agreed to make a quitclaim deed of said property to complainants upon the payment of said sum. No time is fixed when the alleged indebtedness to Barrett should become due. According to the averments of the bill, the agreement with Barrett was that if complainants ever desired to in the future and were able to pay said amount, they had the privilege of doing so and Barrett would reconvey the title to them. Complainants were not indebted to Barrett in any sum, and it was at their request that Thompson conveyed the title to Barrett. Their agreement with Barrett amounted to but an option to buy back the land at some time in the future, if they should so desire and were able to do so. Such an agreement to reconvey does not render a deed absolute on its face a mortgage. The statute of limitations never could run against such an agreement and no right of foreclosure could ever be had, and there can be no right to redeem where there is no right to foreclose, as these rights are reciprocal. *Fitch v. Miller,* 200 Ill. 170; *Caraway v. Sly,* 222 Ill. 203. In the case of *Caraway v. Sly, supra,* it was said: ''An agreement giving

the complainant a mere option to pay when he should be able and desire to do so, with an agreement to reconvey upon such a payment, did not constitute a mortgage, and the averments of the bill, if proved, would not entitle the complainant to any relief." The deed from complainants to Thompson, being absolute upon its face, conveyed the legal title to Thompson, and his conveyance to Barrett at complainants' request passed the legal title to the latter. *Fitch v. Miller, supra; Williams v. Williams,* 270 Ill. 552. The original answer avers that Barrett became vested with the title to the premises by virtue of the deed to him by Thompson, and the averment of the bill itself shows this to be true. The amendment to the answer avers that complainants, for the express purpose of disclaiming any right, title or interest in the premises and in consideration that Barrett would buy the premises and lease them to complainants so long as their mother should live, executed a warranty deed on August 11, 1900, conveying and warranting said premises to Barrett. This amendment does not, as claimed by appellees, set up a defense additional and inconsistent with the defense averred in the original answer. The allegations in regard to the warranty deed from complainants to Barrett in the amended answer were simply averments of additional evidentiary facts bearing upon the intention of the parties at the time of the transaction and were not inconsistent with the claim of title made by the original answer.

As shown above, the bill itself does not aver such a state of facts as would entitle complainants to relief, and would have been subject to demurrer. The proofs of complainants, however, are at variance with the averments of the bill. It is charged in the bill that Barrett agreed to reconvey said lands when complainants desired and would be able to take up said indebtedness. Both complainants testify that, at the time of the transaction with Barrett, a written contract was

executed by Barrett, giving them the right to redeem within 5 years, but the fact that such contract was executed is not established by that quantity of proof that the law demands. ''The burden of proof is upon the party alleging that a deed absolute on its face was intended only as a mortgage, to establish such fact by clear and convincing evidence.'' *Deadman v. Yantis,* 230 Ill. 243. Prior to December 30, 1892, Elizabeth Hickey, the mother of complainants, owned the 80-acre tract of land in question. On that day she conveyed the same by warranty deed to complainants and they, together with their mother, owed in mortgages, judgments and other indebtedness about $5,500. Complainants applied to Thompson for a loan for that amount, offering to give a mortgage on the land to secure the debt. Thompson refused to make the loan and take a mortgage for the reason that the amount represented substantially the full value of the land, and the great weight of the evidence is that at that time the market value of the land was between $60 and $70 per acre. Thompson at the time the land was deeded to him paid up the various debts of complainants and their mother, amounting to the said sum of $5,500, and gave a contract back to complainants by which they had the option to redeem the land within 5 years by paying back the $5,500, and interest on this sum was provided for by way of rentals under a lease. The lease in question was executed by Thompson and provided that complainants should pay as rent for the land $385 per year, this amount being 7 per cent upon $5,500. The lease also provided that complainants should pay the taxes on the land. The lease itself was not produced in evidence but its contents were testified to by Thompson and complainants. While Thompson in his testimony frequently refers to this transaction as a loan, yet it is apparent from his testimony that he considered that he had legal title to these premises subject to the option of complainants to repurchase

the same within 5 years. He testified as follows: ''It was not an absolute transfer of title. It was to secure the money I advanced. At the then price of land, it so nearly represented the market value of it that my attorney suggested I take a deed for it rather than have to foreclose a mortgage and give them a year or fifteen months further use of it.'' It is therefore apparent that he did not consider this deed to be a mortgage or that he had a right to foreclose the same. He further testified: ''I was afraid I was going to have it landed on me in real estate.    *   *   *   I knew I was perfectly safe in the security of my money. I was quite indifferent as to whether they took it up or not. *   *   *   Under the advice of my attorney I required them to convey that land to me by deed and I gave them back a contract by which they had the option to buy back at any time within five years. Then I leased the land for five years, making the consideration of the lease the interest on the purchase money, and they were to pay the taxes during that time. The reason I took a deed instead of a mortgage was on account of the amount involved. It was so nearly the value of the land that I didn't want them to have the fifteen months' additional time to redeem.'' Thompson left New Holland in January, 1900, and from that time on has resided in New York City. Just before he left, he told the witness LaForge that he didn't want this real estate and asked the witness that, in case he had to take the Hickey land, if the latter would take it off his hands, and said that he would rather have the money than the land and that it was worth about $70 per acre. When the option contract was about to expire in August, 1900, complainants went to Barrett and tried to procure a loan with which to redeem the land from Thompson. Barrett refused to make the loan but at their request wrote to Thompson, who was then in New York City, and asked him if he would

extend the time of payment for another year. Thompson replied that he would not. Barrett testifies that thereupon complainants represented to him that they and their mother had lived upon the farm for over 50 years, and it was their mother's desire that she be permitted to reside on the farm while she lived, and requested him to pay Thompson the $5,500 and take a deed from Thompson to himself and then lease the land to them so they would not have to move off the farm. Barrett testifies that he told them positively that he would have nothing to do with the matter unless they themselves made a deed to him so there would be no question about the title to the land. Complainants each testify that the only documents they signed at that time were the lease and a contract with Barrett by which they were to have 5 years in which to redeem the land, and were to pay interest by way of rentals in the amount of $385, the same being 7 per cent on the $5,500, and that the only document that they acknowledged before a notary public was the contract, and positively deny that they executed or acknowledged the deed to Barrett. The deed, however, was introduced in evidence and shown to be duly signed and acknowledged by them. Barrett positively denies that any such contract or agreements were made or executed, and the fact that complainants testify positively that they acknowledged but one document and it being shown that the deed was acknowledged by them at that time, the prima facie presumption, at least, is that the deed was the document and the only document acknowledged by them. The contract was not produced in evidence, and its existence rests wholly upon the testimony of complainants, who stated that they had never had possession of it but that it was left in the possession of Barrett. Another fact which tends to corroborate Barrett in his version of the transaction is that the lease which he executed leases the premises to the mother, Elizabeth Hickey,

for a period of 5 years at a rental of $400 per year. Elizabeth Hickey had no title to the premises at this time, and it is unreasonable to believe that if complainants had claimed to own the premises at that time, they would consent to have the lease made to their mother and not to them. The consideration of the lease also is at variance with that testified to by complainants as contained in the alleged contract of repurchase. They testified that the latter contained the provision that interest should be paid by way of rentals in the sum of $385 a year. In their testimony they attempted to explain this discrepancy by stating that Barrett insisted on paying the taxes himself and that the extra $15 was for the amount of the taxes, but the evidence shows that the taxes had for many years been not less than $30. Elizabeth Hickey died April 28, 1903. The last-mentioned lease expired March 1, 1906, and on October 19, 1905, Barrett executed another lease of the premises to complainants for a period of 5 years. In this lease the rental was $400. This lease expired March 1, 1911, and on August 18, 1910, Barrett executed another lease to complainants for the period of one year and the rental was raised to $600. This lease expired March 1, 1912, and on August 10, 1911, Barrett executed another lease to complainants for the period of one year with the rental at $600. This lease by its terms would expire March 1, 1913. On August 28, 1911, Barrett entered into a contract with George White to sell him the land by the terms of which White paid $4,800 cash in hand and was to pay the balance, $15,000, on March 1, 1912. On September 1, 1911, Barrett executed a quitclaim deed conveying the land to George White, and assigned the lease to complainants which had been executed by him on August 10th. On December 6, 1911, George White conveyed the land to William E. White in consideration of $22,000, and also assigned the lease to him. Complainants paid the first instal-

ment of the rent, which was due September 1, 1912, to William E. White without any complaint or protest, by leaving the money with the Lincoln National Bank for the benefit of William E. White. The second instalment became due January 1, 1913, and complainants failing to pay the same, William E. White brought suit in an action of forcible entry and detainer and procured possession of the premises and a judgment for the amount of rent due. About a year later this bill was filed, nearly 19 years after the original transaction of complainants with Thompson. The conduct of the parties throughout this period of time, instead of being clear and convincing evidence that these various deeds were in fact mortgages, is inconsistent with that theory. Complainants were not indebted to Barrett when the latter received the deed. There was no debt to secure. The fact that both Thompson and Barrett refused to loan the money, but only offered to advance it upon condition that complainants execute an absolute deed to the land, is strong evidence that these deeds were never intended to be mortgages. *Casper Nat. Bank v. Jenner*, 268 Ill. 142; *Bacon v. National German-American Bank of St. Paul*, 191 Ill. 205. Complainants directed Thompson to convey the property to Barrett, and it has been held that where a party, having a right to redeem, directs the holder of the legal title to convey the premises to the purchaser, such purchaser takes the title divested of the condition of defeasance. *Deadman v. Yantis, supra.* After Barrett received the deed from Thompson, he tiled the land and made some other improvements thereon. He paid all the taxes on the land while he held title thereto. Complainants at one time made some repairs on the premises and presented the bill to Barrett, which he paid. They at one time asked Barrett to build a new house upon the land, which he refused to do. They paid rent to William E. White without protest. The different leases made by Barrett

to complainants increased the rent several times without objection from complainants and which would have been in direct violation of the terms of the contract testified to by complainants, if any such contract had been made. All these acts were inconsistent with the theory that Barrett simply held a mortgage on the land. During all these years the evidence shows complainants had a regular attorney who attended to their legal business and was frequently in consultation with them. The evidence introduced by complainants is at variance with the allegations in the bill, which in and of themselves do not present a case for equitable relief. The master in chancery saw the witnesses and heard them testify and the finding of facts made by him is entitled to consideration. *Keuper v. Mette's Unknown Heirs,* 239 Ill. 586; *Glos v. Larson,* 138 Ill. App. 412.

After 19 years' delay in asserting the right to redeem from a deed absolute on its face and after farm values have greatly increased, evidence attempting to establish such a deed to be a mortgage must be scrutinized with care. Complainants have not met the burden of proof necessary in this class of cases, and the evidence does not show in a clear and satisfactory manner that there was any agreement between them and Barrett that his deed from Thompson should be in fact a mortgage.

The decree of the Circuit Court is reversed and the cause remanded with directions to overrule the exceptions to the amendment to the answer and the exceptions to the master's report and to dismiss the bill for want of equity.

*Reversed and remanded with directions.*