# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1877.

CATHARINE KNOWLES *et al.*

*v.*

PATRICK KNOWLES.

1. PAROL EVIDENCE — *to show a deed is in fact a mortgage.* Parol evidence is admissible to show that a deed, absolute on its face, without any written defeasance, is in fact a mortgage to secure the payment of money.

2. MORTGAGE — *burden of proof to show deed is.* Where a party seeks to redeem land conveyed by an absolute deed, on the ground it was given to secure a loan, the burden of proof lies on him to show that fact, and this must be done by clear and decisive proof.

3. SAME — *sufficiency of proof to show a deed is.* The positive testimony of husband and wife that a conveyance of land of the latter is a mere security for a loan of money is not sufficient to overcome the equally positive testimony of the grantee that the transaction was an actual sale, he being corroborated by the absolute form of the deed, and the husband and wife being identified in interest, and the proof showing the absence of any written evidence of indebtedness, or of any fixed time of payment, or rate of interest, or any annual rental value of the property.

4. EVIDENCE — *from acts and conduct of party.* While the unreasonableness or absurdity of a line of conduct, or of acts claimed, is not sufficient to overcome positive evidence that the line of conduct was pursued, or that the acts were done, yet, if the evidence be so imperfect or so conflicting that the truth can not be clearly perceived, the unreasonableness or absurdity of what is claimed to have been the conduct or acts of the parties may be of controlling importance.

5. SAME — *as to the fact of the execution of a deed.* The testimony of a party denying the execution of a deed will not be received in direct conflict with an admission of its execution in his answer; and, besides, it will not be sufficient of itself to overcome the official certificate of the notary taking the acknowledgment.

6. TRUSTEE — *when required to convey legal title.* Where a woman bought property with her own means, and had the same conveyed to a trustee to hold for her, before her marriage, and he was required to convey the same upon her written request, it was held that the property was her separate property, and that a conveyance after her marriage, by her and her husband, to a third person, passed her equitable title, and was a sufficient request to the trustee to convey the legal title to her grantee.

7. COSTS — *liability of trustee.* When a trustee holding property in trust for a married woman refuses to convey the legal title to a purchaser from the husband and wife, and answers a bill seeking a conveyance, resisting the relief sought, he so far identifies himself with the cause of his co-defendants as to make himself liable to a decree for costs.

APPEAL from the Circuit Court of Kane County; the Hon. HIRAM H. CODY, Judge, presiding.

Messrs. BOTSFORD & BARRY, for the appellants.

Mr. JOHN W. RANSTEAD, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Patrick Knowles exhibited his bill in chancery in the court below, against Matthew Knowles and Catharine Knowles, his wife, and Charles J. Hawkins, trustee for Catharine Knowles, praying that Hawkins be decreed to convey to the complainant the legal title to a house and lot in the city of Elgin, which he held in trust for Catharine Knowles. It is alleged that complainant purchased the property of Catharine Knowles for $600, paid at the time, on October 13, 1868, and took the deed of herself and Matthew Knowles, her husband, therefor, in ignorance that the legal title was in Hawkins, as trustee for her; that the complainant, immediately after such purchase, was put in possession of the property, and has ever since enjoyed the same undisturbed; that he has paid, during the time, all taxes assessed

on the property, and, shortly before filing the bill, had sold a portion of it to the C. & P. Railroad Company; and that Hawkins, although notified of his purchase and requested to make conveyance, has refused to do so. The defendants all answered, without oath, denying the right of the complainant to the relief prayed. The joint answer of Matthew and Catharine admits the conveyance by them to Patrick Knowles, as alleged in the bill, but denies that he purchased and paid for the property, or that it was intended their deed should convey an absolute title; and alleges that Patrick only loaned to Catharine $600, to secure the repayment of which, and the accruing interest, Patrick was to have the control and possession of the property, and that the deed was executed for that purpose alone, and is, consequently, but a mortgage; and they offer to redeem by paying what shall be found to be due for principal and interest on the loan, after an accounting for rents and profits by Patrick.

The court below decreed in conformity with the prayer of the bill.

The principal question is, whether the $600 paid by Patrick to Catharine was a loan, merely, or a payment for the property.

Although the deed is absolute in form, and there was no written condition of defeasance executed between the parties, the doctrine is too well settled to need discussion that parol evidence is admissible to show that, in fact, the deed is but a mortgage.

It was held by this court, in *Sutphen* v. *Cushman et al.* 35 Ill. 193, that in order to prove a deed, absolute in form, is a mortgage, evidence of witnesses as to their understanding of the intention of the parties in executing it is not pertinent, but it must be made to appear by facts proved that the transaction was such as the law implies created the relation of mortgagor and mortgagee. It was said: "The right to redeem lands so conveyed can not be established by simply proving that such was the understanding on which

the deed was executed, because equity, as well as the law, will seek for the understanding of the parties in the deed ·itself. The right must be one paramount to, and independent of, the terms of the deed, as well as of any understanding between the parties at the time it was executed. Parol evidence is admissible so far as conduces to show the relations between the parties, or to show any other fact or circumstance of a nature to control the deed and to establish such an equity as would give a right of redemption, and no further. In the application of this rule parol evidence is received to establish the fact that a debt existed, or money loaned on account of which the conveyance was made; for such facts will, in a court of equity, control the operation of the deed. So, too, in regard to any other fact or circumstance having the same operation."

If, therefore, in the present case, the $600 were loaned by Patrick to Catharine, and so created a debt for that amount from her to him, instead of being paid and received as the price of the property, and this formed the consideration for the execution of the deed, it is clear Catharine is entitled to redeem, and that otherwise she is not. The burden is upon Catharine to establish the fact of the loan; and this can not be done by loose, indefinite, or inconclusive evidence, but must be by clear and decisive proofs. *Wilson* v. *McDowell*, 78 Ill. 517; *Conwell and another* v. *Evill*, 4 Blackf. 68.

Matthew testifies: "We lived on these premises a short time after our marriage; got money of Patrick Knowles; said he had money, and if we would turn over the place to him he would give us the money; we wanted $600, and when we returned this money were to have the place back; he was to take the rents and keep the place in repair, and pay the taxes and interest on the money, and when we ·wanted the place he would give it back for the money and interest whenever paid." On cross-examination he says: "When we got the money we went up to McHenry county and thought to buy a place there, but did not; we spent

some of the money to live on; afterwards went to Chicago. Work on a salary; did not have much means; have had money in bank, and have money in bank now." He further says that they have not lived in or controlled the house since. He admits that Patrick has paid the taxes, and says: " did not ask him to return the place until after I heard that he had sold it; * * * did not ask him to account for the rents; expected he would when we wanted the place back again; asked him once at Heelan's about giving the place back; said he would when he got his money; Heelan was present; no time mentioned when we were to pay the money back; wife had the money, except about $70 which I had; no rate of interest mentioned."

Catharine, in her testimony, after stating that she bought the property during the war, with her own money, and had it conveyed to Hawkins as trustee, says: " I wanted some money; complainant said he would.let me have it and take the place, collect the rents, pay the taxes, and when I wanted the place he would give it back and take his money; saw him after he had sold the place to the railroad company, in Chicago; said nothing about having sold the place; went to Elgin as soon as I heard he had sold the place, to see about it, and demanded a settlement with him, and said I would give him the $600 with interest, and he to account for the rents and profits, but he refused." On cross-examination she says: " I left the house before we got the $600; wanted the money to buy a piece of land in McHenry county; did not buy it; was not suited there; used some of the money for support, and have some of it now; have money in bank now; told the tenants to pay rent to complainant; did not tell them he had bought the place." She further says she was " out there two or three times, and in the house; did not offer to pay back money until after he sold the place; saw complainant at Heelan's, and he told me he would let me have the place for his money, but afterwards refused to do so."

The complainant, Patrick, in his evidence, denies, in sub-

stance, every material fact testified to by the defendants, Matthew and Catharine, with reference to the character of the transaction. He says : " Bought the property of Catharine Knowles, October 13, 1868. Her husband came to me and·said she wanted to sell the property ; I told them not to sell it ; she said she had to sell it, and if I did not buy, Hawkins would, and if there was money to be made she wanted me to make it ; that it had been sold for taxes ; said it was worth $600 ; agreed to take it for that sum ; she sold it to me for that sum." He then details the circumstances attending the·making of the deed, and paying for the property. He says, at the time he purchased he was under the belief that she had the title, and did not know that Hawkins held it as trustee.

Identified in feeling and interest as are the defendants, as husband and wife, we do not regard their evidence alone as sufficient to overcome the equally positive evidence of the complainant, supported as it is by the absolute form of the deed and the fact that no written evidence was made either of a condition of defeasance or of the existence of a debt. There is no testimony given by an entirely disinterested witness, conclusive in its character, as to what the transaction was. The notary before whom the acknowledgment was taken is dead, and no one else seems to have been present at conversations between the parties at and preceding the execution of the deed.

One witness, Heelan, says he heard a conversation between complainant and Susan Knowles — when it was he does not say — in which she spoke to him about getting her property back, to which complainant replied that he had not seen any $600 yet. No special importance can be attached to this. It was but a casual remark, and is not inconsistent with complainant's version of the transaction. It does not admit that she had obtained a loan of him of $600, which the deed had been executed to secure ; nor does it show that he was even willing to convey the property to her on the payment of $600. It does show that there

had been some previous talk or understanding between them about conveying the property to her, and her paying $600 ; but what its precise effect was is unknown, and left entirely to conjecture.

Evidence was given tending to prove that the property, at the time of the transaction, was worth more than $600, for the purpose of showing that it is unreasonable to presume the parties could have intended a sale. It is proved that the same year the deed was executed to the complainant, but what time in the year is not stated, Catharine had authorized an attorney at law to sell the property for her, and that he was offered $800 for it, which she refused to accept. The deed to complainant was not executed until the 13th of October, and, for aught that appears, this offer may have been made early in January or February, between which periods there was ample time for fluctuations in value equal to the difference between $600 and what is claimed to have been the actual value of the property. An insurance policy issued on the house, March 31, 1866, for $800, and assigned by Catharine to the complainant, is also in evidence, and has some bearing on the question of value ; but what has been above remarked in regard to fluctuations in value applies with still greater force to this. These were, undoubtedly, circumstances tending to prove that the value of the property was greater than $600, but by no means conclusive. John Connor thinks the property, in 1868, was worth $800, but knows of Matthew offering it for sale before that time for $600. Coleman and Stainforth think the property was worth $800 in 1868. On the other hand, Cox, assessor for Elgin in the year 1868, Hanson, an owner of real estate, residing near the property, and Rosencranz, who is acquainted with the property, and has been assessor for several years of Elgin, say the property, in their opinion, was not worth above $600 in 1868 ; and Hessing, a resident of Elgin for twenty years, residing on the same block with this property, and Wilcox, who also knew the property in 1868, fix its value from $600 to $700.

This reference to the evidence, alone, is enough to show that no stress ought, in determining the character of the transaction, be placed on the claimed inadequacy of price. It has been matter of observation to all that within the last twenty years there have been, in all parts of the country, repeated and very great fluctuations in the value of real estate, as well as in the value of other property; and it is obvious that such fluctuations may occur, from many independent causes, in any and every locality. So, too, it is of frequent occurrence that a person desiring to sell at one time rejects an offered price, and subsequently, and before the lapse of many months, accepts a less.

The claimed discrepancy in value, here, is not so gross as to exclude the presumption that it is attributable merely to an honest difference in judgment; nor is it established with sufficient fullness and certainty that there is, in fact, such discrepancy.

In our opinion, the undisputed facts — the absolute form of the deed, the absence of any written evidence of indebtedness, the absence of any fixed time for the repayment of the money, and the failure to agree upon a rate of interest or any annual rental value of the property — so strongly corroborate the evidence of the complainant that the preponderance is decidedly with him.

While the unreasonableness or absurdity of a line of conduct, or of acts claimed, is not sufficient to overcome positive evidence that the line of conduct was pursued, or that the acts were done, nevertheless, if the evidence be so imperfect, or so conflicting that the truth can not be clearly perceived, the unreasonableness or absurdity of what is claimed to have been the conduct or acts of parties may be of controlling importance; for those who are allowed to act for themselves are presumed to conduct themselves and act with ordinary prudence and sagacity — in other words, with such prudence and sagacity as characterize the acts of mankind, under like conditions, in general. The rule is approved by the experience, and applied in the practice, of all.

It is not within the line of ordinary experience that a man having money to loan for interest is willing to loan it without a fixed rate of interest, and to be repaid at the mere pleasure of the borrower.

If, as Matthew says, no time was fixed for the repayment of the money, but, as both he and his wife, Catharine, say, she was simply to have the right to have the property back whenever she repaid the money, it is not perceived the complainant could ever have enforced repayment by a suit at law on the loan, or by a bill to foreclose, treating the deed as a mortgage. The debt would only mature by her electing to extinguish it; and, before maturity, its payment could not be enforced.

It would seem to be so clear that an arrangement of this character must inevitably be prejudicial to the lender that any degree — even the lowest — of prudence would forbid it.

Nor is it within the line of ordinary experience that a person should borrow money upon which to pay interest, and secure it by a mortgage on all the real estate owned — as is here claimed to have been done — without a present actual use to which to apply the money; and still less that any part of such money should be kept on hand, unproductive, for years, leaving the mortgage, with its accumulating interest, unsatisfied — assuming, of course, that an ultimate redemption was intended.

The pretended use, here, for the money was to buy land in McHenry county. But no land had been bargained for or selected; and it seems that it was not even known that they could be suited there, for it appears, after they got the money, they could not be. Why the money should be retained, when it was known it could not be thus used, if that had been the purpose in borrowing it, with no other investment in anticipation, is, to say the least, difficult to conjecture. Ordinarily, it would seem, the desire would have been to repay the loan and repossess the property, so as to realize from its rents, look after its protection, and be ready to avail of any advantageous offer to dispose of it, or to appropriate it to personal use if that was not desired.

If she had the right to have the property back whenever she repaid the money, it would seem, when she found she had no use for the money, she would have repaid it without delay, as her interest required she should.

The deed bears date, it will be recollected, October 13, 1868, and it is alleged in the bill, and not denied in the answer, that the contract by the complainant to sell a portion of the property to the railroad company was made on October 22, 1873. Now, during this period of five years it is not pretended that defendants ever gave any attention to the property, such as an owner might be expected to give. They paid no taxes, paid no attention to repairs, made no inquiry after rents to see whether the property was being rented for what it ought to produce, and they were being properly credited therefor, and made no offer to refund the money. It is to us inconceivable that such negligence and indifference would have been exhibited had the fact been, as claimed, that the deed was but a mortgage, and the complainant been under obligation to give credit for the rents, after the payment of taxes, upon the mortgage.

It can not be said the complainant should be denied the relief prayed upon the ground that the evidence shows that the defendant Catharine did not execute the deed. Her evidence to that effect is in direct contradiction with the admission in her answer, and is, besides, insufficient to overcome the official certificate of the notary. *Kerr* v. *Russell*, 69 Ill. 670; *Smith* v. *Cremer et al.* 71 id. 185; *Russell* v. *Baptist Theological Union*, 73 id. 337; *Marston* v. *Brittenham*, 76 id. 614.

The only remaining question is, whether Hawkins, the trustee, was properly decreed to convey. He interposed a separate defense, claiming that he had received no request from the defendant Catharine to make the deed, and, therefore, was not authorized to do so.

It is shown the property was purchased by the defendant Catharine, and paid for, out of money she made during the war, before her intermarriage with the defendant Matthew. It was, therefore, her sole and separate property, in regard

to which, by the act in relation to married women's property, of 1861, she was, at the time of the sale to complainant, authorized to contract.   By the deed of trust to Hawkins he is expressly required, upon her written request, to convey the property, upon such consideration and to such person as she shall direct.   He has no right to interfere with or control the sale of the property in any respect, and no discretion, when requested as above, in regard to the execution of the deed.   Her deed conveyed her equity in the property to the complainant, and we can imagine no more satisfactory request in writing than it is, to the trustee, to convey the legal title.   We think he had all the request made upon him that was necessary, when the complainant produced Catharine's deed and demanded a conveyance from him.

Nor do we see any objection to the decree upon the question of costs.   Hawkins, by his separate answer and defense, as well as by his previous unauthorized refusal to make the deed, has elected to identify himself personally with the cause of his co-defendants and abide their fortune.   He should, therefore, bear the burden which his position has brought upon him.

*Decree affirmed.*