574

Harvey Williams, Appellant, v. M. J. Griffith et al., and Mary Leah Griffith, Administrator of Estate of M. J. Griffith, Deceased, Appellees.

Opinion filed May 31, 1941.

MATHENY & WALKER and MURRAY & MILLER, both of Vandalia, for appellant.

ROBERT G. BURNSIDE and WILL M. ALBERT, both of Vandalia, for appellees.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from the circuit court of Fayette county dismissing for want of equity the complaint of appellant, Harvey Williams (hereinafter called plaintiff), against the appellees, M. J. Griffith, Byron Glasco, the Texas Company, a corporation, Mary Leah Griffith, Isabelle G. Brooks, Arthur A. Brooks, and Mary Leah Griffith, administrator of the estate of M. J. Griffith, deceased (hereinafter called defendants.)

The defendant M. J. Griffith, died after the filing of the action and prior to the trial of the case and his heirs and the administrator of his estate were substituted as parties defendant. The interests of the defendant, the Texas Company, is not being contested in this proceeding and no appeal is taken from the portion of the decree relating to the oil and gas lease of the Texas Company, which is recognized as being in full force and effect. The issues in this case are confined entirely to the rights of the plaintiff Williams, and the defendant Griffith, and his heirs.

Plaintiff Harvey Williams, filed a complaint to redeem from what he contends is a mortgage covering

100 acres of land located in Fayette county, Illinois. The instrument appears to be an absolute warranty deed on its face. It is contended by plaintiff that such deed was intended as additional security for the payment of the indebtedness of plaintiff to the deceased defendant, M. J. Griffith. The defendants, after denying the allegations of the complaint, contended that the deed was given for the purpose of satisfying a previous indebtedness and not as additional security, and also contended that the plaintiff was guilty of laches in permitting the deceased M. J. Griffith to remain in uninterrupted possession of the premises for a period of five years. Defendants, likewise, filed a counterclaim reciting that the oil and gas lease from plaintiff to one Byron Glasco be deemed to be null and void and canceled as a cloud upon the title of the other defendants in the case.

The evidence discloses that on August 10, 1922, the plaintiff and his wife (since deceased) executed a mortgage to the said M. J. Griffith upon the premises involved in this action, to secure a promissory note in the principal sum of $2100. The mortgage was in the usual statutory form and had the customary provisions for interest, appointment of receiver, payment of costs and attorneys' fees, and insurance. During the eleven years intervening between the time of the execution of the mortgage, and January 9, 1933, no payments were made upon the principal of the note although it was, by its terms, payable in 1927, and during the last three years of such period no interests payments were made. On January 9, 1933, plaintiff and his wife, joined in executing to M. J. Griffith, as grantee, a warranty deed, purporting to convey the absolute title to the premises. The deed was in the usual statutory form and for a stated consideration of $1. It bore internal revenue stamps in the sum of $2.50 indicating a presumed consideration of $2,500 (the indebtedness at the time was approximately in that sum). The deed further pro-

vided that it was subject to a mortgage in favor of the grantee, that possession was to be given to the grantee on or before March 1, 1934, and that the grantor was to pay taxes for the year 1933, and was in addition to have all the crops raised on the land in the year 1933. The deed was filed for record on January 16, 1933, and two days later, the mortgage referred to was released on the margin of the record by M. J. Griffith, such release reciting that it was made in consideration of the full payment of the amount secured by the mortgage.

Pursuant to the terms of the deed, plaintiffs surrendered possession to Griffith in March 1934, and Griffith went into possession through his tenant. During the four and one-half year period that followed he remained in undisputed possession of such premises, farming them and paying taxes thereon. There is no evidence that the title of defendant was disputed in any way until September 1938, which was the same month during which oil was discovered in a certain pool of which the premises constitute a part, and which was only four months before the first producing oil well was completed on the premises in question.

An oil and gas lease was executed by the plaintiff and defendant Byron Glasco, and Russell Williams, son of the plaintiff, also entered into a contract with such defendant Glasco, by the terms of which Glasco apparently agreed to recover the premises and to pay all expenses of litigation, and in consideration therefor was to receive such oil and gas lease. While such contract was admitted in evidence, we have only a résumé of some of the provisions of the contract before us.

As we have previously stated, M. J. Griffith died prior to the trial of the case. Only two witnesses testified to conversations had at the time of the execution of the deed. They were one Jesse Pryor and Russell Williams, son of the plaintiff, who testified over objection that he was disqualified by reason of his inter-

est. Plaintiff's son testified that M. J. Griffith, at the time he took the deed, agreed to deed the land back to the plaintiff at any time in the future that he, the plaintiff, could raise the money, but that if he couldn't raise the money, he was under no obligation to pay the indebtedness. Pryor also testified that Griffith stated that the plaintiff could have the place back if he could raise the money in the future. Two other witnesses testified to conversations had between the plaintiff and M. J. Griffith in November of the preceding year as to the "right to redeem" or to buy the land back, and, in substance, that the deed which was given was for the purpose of "squaring off the mortgage."

Two witnesses who testified on behalf of defendants stated that in conversations between plaintiff and said M. J. Griffith during the previous summer, it was stated that plaintiff was unable to make his payments and wanted to deed the premises to Griffith in satisfaction of the mortgage. The tenant, who took possession when the plaintiff left the premises after giving the deed, testified to statements by plaintiff that the "place" was being given up to Griffith and that the plaintiff would move on the appointed date, as specified in the deed. A note and mortgage ledger of the deceased M. J. Griffith which was introduced in evidence (over the general objection of plaintiff), recited that the said M. J. Griffith had delivered the papers to plaintiff and had taken the deed to the farm in full settlement of the loan. A daughter of the said M. J. Griffith testified that the handwriting of the deceased had become nervous in the past few years and that she could tell from the entries that the same had not been made during the past two years. The evidence presented by plaintiff tended to show that neither the note nor any other documents were delivered to plaintiff at the time the deed was signed, and was also to the effect that the purpose of the taking of the deed was to avoid foreclosure because of the age and illness of the

parties. There was also evidence to the effect that plaintiff's sons had conversations with the deceased Griffith about "redeeming" the land, or settling the dispute, all of which conversations were after the discovery of oil in the vicinity. The daughter of the deceased Griffith testified that she searched among his papers and found no notes or mortgages signed by plaintiff and his wife. Plaintiff, in rebuttal, testified that the note and mortgage were never returned to him. It is contended by plaintiff that the court below should have entered a decree finding such deed to have been a mortgage and permitting plaintiff to redeem the same.

It is correctly contended that a deed, absolute on its face, may be shown to have been intended as a mortgage, by oral declarations or by acts of the parties (*Cassem v. Heustis,* 201 Ill. 208), and courts of equity scrutinize transactions between a mortgagor and mortgagee very closely to determine whether or not a conveyance could have been intended as a mortgage (*Cassem v. Heustis, supra; Alexander v. Rodriguez,* 12 Wall. 323, 20 L. Ed. 406), and that if a note evidencing an indebtedness is retained by the grantee, such indebtedness is not satisfied by the conveyance unless the contrary is shown (*Wallace v. Greenman,* 321 Ill. 423).

The test or criterion, as was stated in the cause of *Illinois Trust Co. v. Bibo,* 328 Ill. 252, at page 259, "is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If that liability is left as subsisting and not discharged or satisfied by the conveyance, and if the grantor is still regarded as owing and bound to pay it at some future time, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations are made or inserted in the instrument." The conveyance, in such

instance, takes effect when delivered, and its character is fixed at that time, and the intention of the parties at that time is controlling (*Kelly v. Lehmann,* 297 Ill. 33; *Kulik v. Kapusta,* 303 Ill. 208; *Bearss v. Ford,* 108 Ill. 16).

Under the facts in this case (even as developed by plaintiff's evidence) it appears that the parties intended, at the very least, that there was to be no further obligation on part of the mortgagor after the deed had been given. In the words of the plaintiff's son, who testified in his behalf, "No definite date was set when my father should pay this money, just any time we could raise the money—he was to deed it back any time we could pay him. If he couldn't make it he wasn't to be liable for the loan." The cases in this State have clearly established, that the fact that there is an agreement to reconvey does not render a conveyance a mortgage, but the essential things are the existence of a debt and the intention to secure its payment (*Crane v. Chandler,* 190 Ill. 584).

The courts have, likewise, repeatedly declared that before a deed can be held to be in the nature of a mortgage there must be an existing debt or obligation which the grantee in the conveyance can enforce by foreclosure proceedings, and that the right to redeem and the right to foreclose are reciprocal rights, and one cannot exist without the other (*Caraway v. Sly,* 222 Ill. 203; *Friend v. Beach,* 276 Ill. 397; *Fitch v. Miller,* 200 Ill. 170).

Under the facts, as presented in the record, as bearing on the principles outlined there was no liability on the part of plaintiff for the payment of any indebtedness, and deceased Griffith could have been in no position to file an action of foreclosure against the plaintiff. The physical evidence, as to which there is no dispute, shows the acceptance of a deed, absolute on its face, the release of the mortgage of record, the taking of possession by the grantee, and the payment of

taxes without objection until many years after the deed was given, when oil was discovered on the premises, the discovery of which has caused a substantial and speculative rise in the value of the property. Under the circumstances the chancellor was justified in concluding that the defendant had clearly sustained the burden of showing the degree of fairness which the law requires. Under the rule of *Alexander v. Rodriguez, supra* it is clear that the mortgagee has been shown to have been fair and frank and to have treated with the property on the basis of its actual worth at the time the deed was taken.

The courts of this State have many times repeated that where a chancellor receives the evidence in open court and sees the witnesses and hears them testify, his findings will not be disturbed unless palpably wrong or manifestly erroneous (*Hall v. Pittenger,* 365 Ill. 135; *Page v. Keeves,* 362 Ill. 64; *Greer v. Carter Oil Co.,* 373 Ill. 168.) Considering all the facts in the record, the disputed testimony as to the purpose and intention of the parties as to the nature of the transaction at the time the deed was taken, we are unable to say that the court below committed any manifest error in finding that the deed which was taken was, in fact, absolute. We must, therefore, conclude that the court below did not err in dismissing the complaint for want of equity, and that the decree was not erroneous in voiding and cancelling as a cloud upon the title, the oil and gas lease of plaintiff and defendant Glasco.

The decree of the circuit court of Fayette county, appealed from will, therefore, be affirmed.

*Affirmed.*